Good morning, Your Honors. May it please the Court. My name is Philip Spector, and I represent the plaintiff-appellant in this case, Helen Armstrong. Several years ago, Helen Armstrong and a co-worker reported to state authorities that the doctors they worked for were engaging in dangerous health and safety violations, including the use of contaminated syringes and expired medicine. Days later, her employer retaliated against both Mrs. Armstrong and her co-worker, demoting both of them. Ms. Armstrong previously had an unblemished record after 23 years on the job, and yet then, within days, the first of what would eventually be dozens of demerits started to appear in her file. She then filed a whistleblower complaint for this retaliation with Nevada state officials. The key issue in this case is that filing that complaint made her life much, much worse. Nevada state officials proceeded to mishandle, obstruct, and ultimately shut down her whistleblower complaint. Among other steps, they wrongly informed her doctors about her complaint, blocked subpoenas, colluded with the employer, and ordered her complaint closed without any investigation at all. One of the lead investigators on the case resigned in disgust over what he saw transpire. I think we know the facts. Can we go on, please? Absolutely, Your Honor. So I think we, you know, read the defendant's brief in this case, and for the most part, they argued we didn't do it. This was a fair investigation. And so I think one needs to start with the fact that even their own officials, Your Honor, say the opposite. Their officials say, all of a sudden, this wave of discrimination and retaliatory effort came through as a result of the actions. Another investigator said, I was sure— Could we catch the legal issues, please? As I understand the legal issues, the first and perhaps most prominent one is whether she has a procedural due process argument and a substantive process argument. They both depend on there being a property interest in her job and then on the government having interfered with that property interest in some cognizable fashion. Is that accurate? So we can start with the procedural due process thing, Your Honor, which is— I'm having a hard time hearing you again. I don't know why. Go ahead. I apologize, Your Honor. Can you hear me now? A little bit. Could be louder, but go ahead. So the district court held that, starting with the procedural due process claim, the district court held that plaintiff cannot have a property interest because it concluded she was an actual employee. Let's assume that he's wrong in the larger way he said it. That is, there could be a property, and since there is a—in this narrow instance—well, there's a Nevada general public policy exception to actual employment, and there's also the particular OSHA protection. And in some sense, let's assume that those protections create a property interest to the extent of those protections. Then what? Because this is what's bothering me, is that the way the statute—and the statute is mandatory in a sense, but it has kind of mushy language with regard to the kind of investigation that's necessary. And second of all, the reinstatement isn't done by the agency at all. The agency is essentially a prosecutor, right? Well, they are their review body, Your Honor. I mean, they open up a legal avenue of filing a whistleblower claim with them. They hold themselves out as the avenue—sorry, Your Honor—they hold themselves out as the avenue that employees should pursue if they have a whistleblower claim. And she filed a complaint with them, and they were reviewing her complaint. And so, you know, there are two parts to this question, I believe, Your Honor. The first is the question, what did defendants do wrong? And there I would say there are two layers to that question. The first is they abandoned every objective indicia of due process. And I could go through the list, but you saw it in the brief, Your Honor. I think the key point here is that their only response is that we have discretion under the statute. And I think this is what you were referencing as well, Your Honor. Is there—one thing I couldn't tell is there is an OSHA manual about how they're supposed to do the investigation. Is there also a Nevada OSHA manual? I couldn't find that in the record. My understanding is that the operative manual at the time of the events of this case was the OSHA manual. But they hadn't even prepared their own manual. I believe that they were in the process of preparing their own manual when the events of this case unfolded. It did exist somewhere in the middle of all this, but I couldn't really tell. Yeah, I think you might have seen—there might have been references to it because it was in the process of being developed. But my understanding is that the operative manual was the one in the excerpts of record, Your Honor, which is the OSHA manual. And, you know, as we pointed out in our brief, and I won't go through it unless Your Honor would like, but they violated pretty much every chapter of this manual. There was a complete abdication of any objective indicia of process. But back to your question, Your Honor, about discretion. So, you know, this seems to be their main response, but they don't cite any law for the proposition that because state law gives them discretion, they can use that discretion to violate federal constitutional rights, right? I mean, it's fairly clear that if they were refusing to investigate the whistleblower claims of Republicans or African Americans, they couldn't fall back on the fact that, oh, the statute gives us discretion. And they couldn't use that discretion to seize the property of citizens without a warrant or without compensation and then say, oh, the state statute didn't say we can't do that. But can you tell me exactly what you think the property interest is? You see, that's the problem. I think it gets mixed up together. What exactly is the property interest? You're absolutely right, Your Honor. I think every one of this court's decisions that has dealt with a case in the line of Merrick v. Mackey, Demartini v. Farron, FDIC v. Henderson, the property interest gets entangled a little bit with the question of causation, which I'm happy to address. But the property interest is the right to be free from termination in a manner that offends public policy. And in this case, the public policy is the right to be free from retaliatory discharge. Counsel, if I can ask you there, when I started reading your brief, you say, and we know the law, at-will employment you have no property interest in. You say, ah, but Nevada has a public policy exception to at-will employment. But I thought about it, wouldn't all the discrimination statutes, race, sex, age, whatever, have the same kind of exception? And then I would have thought that there would be a lot of law where somebody brings a case similar to yours, person says it's at-will employment, and you say, ah, but the discrimination statutes create this property interest. And I couldn't find any. Am I missing some? Because I would have thought that would have been where you would mostly see the impingement on at-will employment, and then you'd bring public policy in behind it. Am I missing something? Are there no cases where there's a property interest because of discrimination law? I'm not aware of a case where there's a property interest for someone being fired as a result of having been discriminated. But the reason for that might be that I'm also not aware that the Nevada State Supreme Court has held that one has a right to bring a common law tort for having been fired on discrimination grounds, right? It might reside in the statute. We're actually only talking about Nevada. We're talking about nationally. But the difference is, to me, the difference is that under Title VII, for example, and this is why I want to be clear about what the property interest is. Under Title VII, the question is, you might have a property interest in not being fired for a discriminatory reason, but you have to have a governmental requirement of protecting that. And actually, under Title VII, the EOC never has to bring a lawsuit if they don't want to. Here, there is mandatory language to some degree of the government's obligation. Similarly, under the NLRA, for example, the protections of the statute may be property interest, but the enforcement mechanism in terms of the government involvement is non-mandatory. So I think that's where the gap is. So that's why I'm concentrating on in what sense is the enforcement mechanism mandatory, and is that the property interest as opposed to the actual substance? It could be, Your Honor, but I don't believe this court needs to go that far. In DeMartini v. Ferrin, this court held, again, that employees of property interest inactive employment free from discrimination for reasons that offend state public policy. And it offered as an example of Well, those were cases in which you had the government affirmatively interfering. Here, we don't have the government affirmatively interfering. I mean, there's some underlying suggestion that maybe it was. But mainly, the complaint is that they didn't protect you. This goes to the question of what we call causation, Your Honor. And there, I do think that it's worthwhile, as we suggested in our brief, to divide the world into the conduct that occurred before she was terminated and the conduct that occurred after she was terminated. And the standard here is clear. It's the one we cited in our brief. Causation can be shown through, first, some kind of direct personal participation in the deprivation. And this is from Merritt v. Mackey, Your Honor. Or, second, also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury. And so, if we look first at the conduct that occurred before she was terminated, you know, even defendant's own officials say that they set in motion and exacerbated the waves of retaliation that occurred. And I can go through that if you'd like, Your Honor. But then, flipping to the conduct that occurred after she was terminated, you know, here, if a citizen comes to a government agency or a government official to remedy an injury at the hands of a private party, and the government official denies the citizen due process in its review of that application, I guess you could say that the government set into motion an ongoing violation of the rights, but it's probably more accurate just to say that the government officials were personally involved in the violation that denied the defendant the property right. And so, you know, if a person were denied child support by a spouse, and a state agency corruptly denied her the attempts to obtain relief without fair process in collusion with the spouse, you would just say that they denied her due process. And so, for the conduct that occurred after she was terminated, we think it falls very cleanly under the first prong of merit v. Mackey, or the first way in which one can show causation under merit v. Mackey, which is direct personal participation. Direct personal what? Participation in the violation, Your Honor. Why is there direct personal participation? Well, because this is a woman, if we're talking again about the conduct that occurred after she was terminated, this is a woman who filed a complaint with a state agency seeking relief against her employer. And the allegations are, you know, again, corroborated allegations in the record, that the agency engaged in deep violations of due process in collusion with the employer. And so in that case, it's actually a classical example of a due process violation. But it's not a classical example of directly involving, of causing the, if you think the deprivation of the due process right is the right not to be discriminated against for protesting, I don't understand the government, I mean, on these allegations, and disturbingly, those who have done absolutely nothing to protect her, even though it appears to have had some obligation to do so, but I don't understand how they caused the problem in any sense. So that's why I think it matters what the due process right is. No, no, understood, Your Honor. I mean, I think in either case, right, whether we're talking about personal participation, or we're talking about setting in motion a series of acts, you know, the second part of the Merritt v. Mackey test, in both cases, the property interest is the right to be free from losing one's job as a result of retaliation. In the first case, for acts that occur before, they're setting that into motion. For acts that occur afterwards, they're depriving her of it, in the same way, Your Honor, that if someone stole $50 from me, and I filed a civil claim against them in court, and the judge colluded with the defendant, the person who stole the money from me, I would say that that was a due process violation. So the judge should watch the person? The judge denies me all due process because he's colluding with the defendant, just as an example, Your Honor. If that were the state of affairs, we would call that a due process violation, and again, I would argue, I posit, Your Honor, a fairly classical one. The due counsel, in your hypothetical, the due process violation would be simply ruling against you for corrupt reasons? That is, he gave you all the process, you testified, it's just that he was corrupt. Because my query here, once we cut through the chase, to what degree does your theory allow people to sue the government agency, not the employer, but the government agency, whenever things go badly? Now, you may be right, but how do you draw the line between things going badly and denying due process? Right, well, I think there are two elements to that, Judge Boggs. I mean, the first is the question you asked earlier, right, which is, like, you know, where does one draw the line on the property interest? And there, again, I would say that one looks, as one often does, or usually does, in property interest questions in due process cases, you look to state law, right? And in this case, this is something the Nevada State Supreme Court has held quite clearly, that there's a public policy interest in being free from retaliation for whistleblower complaints. It held that squarely, and we'll see the case that the defendant's going to respond to. But then on the due process claim question, on the contents of the claim, Your Honor, you know, here I would say it's an excellent question, and where you draw the line is not entirely clear. But I would say as long as one recognizes that one does have a due process rate in this case of some sort, and remember, the defendant's—oh, I'm sorry, go ahead, Your Honor. Ultimately, it's the court. There's no direct remedy available from the agency, is that right? If they want to get reinstated and they have to go to court and convince the court, the agency has to go to court and convince the court to reinstate her, is that right? That is correct, Your Honor. So the right to keep her job is essentially contingent on another actor that we're not counting here, which is the court. That is correct, but she was denied the opportunity to seek that remedy, Your Honor. That's why the whole case sits, to me, a lot better if you call the due process right the right to have the agency protect the other right rather than focusing on the other right directly, which is not within the agency's direct control in any sense. I mean, if the agency had gone and got her fired, that would be one thing. You're not really alleging anything. I mean, I understand that's an undercurrent, but you're not alleging they instigated the firing, right? Well, I would say, Your Honor, absolutely. I mean, so the defendants in this case, I mean, the defendant officials say that what they observed were the defendants colluding with the employer. Can you just give me a yes or no? Yes or no? Are you alleging that? I am, yes, Your Honor. Where? So, you know, throughout the complaint, it discusses, Your Honor, the fact that the defendant officials engaged in conversations with ENSA. This is Pellegrini as well as the senior officials. Right, but do you anywhere suggest that they told this agency to go and fire them? Well, we have, you know, I mean, this is where, Your Honor, we have quotes from the defendant officials, the investigators on the case, who say that they believe, and I can point you to this in the brief, Your Honor, they say that their understanding, what they believe, is that the defendant officials were colluding with ENSA. But even if we were to set that aside, Your Honor, and look at what happened afterwards, you know, that again, I would say, Your Honor, and I apologize, I know I see I've run out of time. All right, afterwards is they didn't get her job back. That's different. Yes. No, that's absolutely right. But, you know, I would posit, Your Honor, that it's similar, again, to the example, the hypothetical I talked about earlier, where if the state of Nevada suddenly started only investigating the whistleblower claims of Republicans, yes, I mean, they would still have to go to another board. In this case, they'd have to go into court. But that would be discriminatory. Well, that's a pretty court-textured violation, so it makes it too easy. Let me ask you one last question, because you're out of time. One thing that baffles me about this case is there's all kinds of declarations, and everybody's arguing about what's in the declarations, but all we have is motion to dismiss and a complaint. Is that right? That is correct, Your Honor. And we should ignore everything else. I don't believe so, necessarily, Your Honor, for two reasons, very quickly. One is several of the statements actually do appear in the complaints and were attached to the complaints. Yes, I know. It's in the complaints, it's in the complaint. What else? Yeah, so, and then the second argument, Your Honor, is that I do think, like, if the defendants are going to come forward and their principal response is that these claims are implausible, and, like, they cite two extra complaint evidence of that, and we come forward with our own officials that find these claims plausible, then we say, you know, Your Honor— Then you should have asked them to convert to a motion for summary judgment. It's a very strange situation. I'll ask your opponent about that as well. Thank you, and we'll give you a minute in rebuttal. Thank you. Mr. Conner. Good morning, Your Honors. May it please the Court, Jeffrey Conner on behalf of the State Defendants. This Court should affirm the District Court's dismissal of Ms. Armstrong's complaint, unless the Court has any specific questions about the conspiracy claim or the negligent inflection of emotional distress claim. Well, I do have one. I do. I would like to hear something about the negligent inflection, but not first. Let's go to the other one. Okay. Understood, Your Honor. We'll stick to the due process issues right now, but definitely get to the NIAD claim. You know, I think that the discussion that the Court's been having with opposing counsel is very important, identifying what it is that is the property interest of the state that triggers actions of the probe, how that establishing that the deprivation of that property interest is the result of state action. Now, my colleague in addressing the state action issue actually points to language from Merritt DiMacchi, as well as in the briefing relying on Your Honor's opinion from Tatum v. Moody to address the flows from their actions. I'm sorry, Your Honor. That is addressing the undercolor of state law portion as it relates to a Section 1983 claim. I really don't understand that argument. In other words, if what they did here is a deprivation of due process, then there is state action. So that's what we should be talking about. So that's my point, Your Honor, is that when you look at the Merritt DiMacchi opinion, the very next paragraph after what my colleague relies upon to establish this flows from test actually addresses the due process requirement for state action. And the Sullivan case that— Look, there was state action here. The agency did a whole bunch of things. The question is whether those denied her due process. So I don't understand your state action. There was plenty of state action. That state action results in the deprivation of her right. And so her protected property is here. Yes, that's correct. There resulted in a deprivation of a property right, but there's no state action problem. They claim that the property right is her right to be free from retaliation based upon her whistleblower. Well, that's a version. Another version is the property right is the right to have the agency which is directed to protect her from that. I think they've waived and abandoned that type of theory, Your Honor, because they have not appealed the district court's determination that there is a private cause of action under the OSHA statutes. And so I don't think that's really— Well, we know there's no private cause of action, but the language is still mandatory. They shall do this and they shall do that. And that she has a right not to be discriminated against. And they're supposed to investigate. They shall investigate. They have a discretion about how to investigate, but they shall investigate. And if they find that she was discriminated against, they shall bring a lawsuit. Right, Your Honor. But that's the point, is that if she does not have a private cause of action to enforce the actions under that statute, she doesn't have a 1983 enforced statute. Why is that? Who said? Well, I think we're getting beyond the briefing here because that's not the claim that was raised here. What was raised is that her private property interest is her right to employment as opposed to a right to— Well, that's part of it. She has to have that or she doesn't have anything else. So I'd be happy to provide the court with additional briefing— Are you changing your position as to whether she— whether she does have a property interest in her private employment to the degree of the protection of her right against retaliation? Are you walking away from what the district court said, which is that as long as she's an otherwise at-will employee, she has no property interest? I think the district court's language is— maybe it's a little bit too far in suggesting that she rest. But it is clear under Nevada law that her whistleblower status does not change the fact that she remains an at-will employee. And so she can be fired without cause because she's an at-will employee, but that falls back into the tort issue of under state law, whether or not she has a viable claim for tortious discharge against her employer. And, of course, as respondents argued in the briefing, that under Nevada law for her to have a viable claim there, she has to show that her firing was solely based upon the discriminatory intent, that if there was any other basis for her— mixed-modus theory doesn't pass muster under Nevada law. So the allegation is a but-for-approximate-cause allegation. This is why she was fired. Now, you dispute that, but that's their allegation. Correct, but—and that is an important point, though, Your Honor, of what you asked my colleague about the consideration of extra record evidence. They produced a lot of the extra record evidence that's being cited. And they produced it also, and we have to ignore all of it. Is that right? I think— Yes, that's correct. In terms of— Anything that's actually mentioned in the complaint. You need to look at the complaint itself, and I do think here that this isn't a situation where much of this was actually attached to the complaint itself, where it would be part of the complaint under FRCP 10-C. But it's not anything that's attached to a complaint. It's something that's attached to a complaint because it's referred to in the complaint. Right. Well, and or whether or not it's something that would be considered a written instrument that would be considered part of the complaint for all purposes. Something like her actual charges and the letters and so on, but not all this material about what actually happened, including all of your material about that she was charged with crimes and so on. All that's sort of out the door, no? I think that's correct in some sense, Your Honor, though I do think it would not have been an error for the district court to consider that the criminal proceedings— If he converted it all to a summary judgment motion, which he didn't do. Either that or that those are things that the court could take judicial notice of with respect to dealing with whether the allegations plausibly established that her firing was the but-for cause of— or that the retaliation was the but-for cause of her termination. But she alleged it was in the complaint. And you'll have a summary judgment motion, but that's not where we are now. We aren't, Your Honor. But you argued, as I understand it, because you argued that she had no due process right because she was otherwise an outlaw employee, and the district court bought that and you didn't go into anything else. So all the complications of the case are kind of not there. I think that it's right to say that she only has a very limited due process property interest here that she cannot be terminated for a violation of state public policy. Well, it would be nice if you told the district court that and we could have had a ruling on the actual case as opposed to something that's incorrect and allies all the difficulties of the case. Because what the district court said is very nice and clear-cut, but it's wrong. I don't know that it's wrong, Your Honor, in the sense that I think the district court is correct that her whistleblower status does not change the fact that she remains an at-will employee. That's true, except to the degree that she's protected by the whistleblower statute. Correct. And so... So she does have some kind of a property interest somewhere along the line. And so if we get past that point, if you get past the first prong, which is whether or not she has a protectable property interest, the next question the court has to ask is whether or not she plausibly pleaded allegations showing state action that resulted in the deprivation. And in order for a private conduct to be considered state action, they have to show that there was either some coercive power... They're arguing that the private conduct was state action. They're arguing that the state action was state action. It's not useful. Can we go to the IED issue, please? Certainly, Your Honor. IED. The NIED claim fails on the merits because of the fact that Ms. Pellegrini's conduct in sending out that letter is discretionary. It may have been discretionary, but there's a second prong. There is a secondary prong. What kind of social, political, or economic policy determines whether you CC somebody in a letter? I think the point of sending a letter itself is to inform Ms. Armstrong that her withdrawal of her claim resulted in the waiver of her appeal rights, but did not otherwise remove her whistleblower status. So if she had further questions about her rights as a whistleblower, that she could continue to contact Nevada OSHA about that. And ordinarily, in a situation where the respondent has been informed of the case, know that the case is over, that the complaint has been withdrawn, that does not eviscerate Ms. Armstrong's status as a whistleblower. That's a very important policy that OSHA is there to protect workers' rights when they make a whistleblower complaint. How does that connect with sending the letter to the respondent when the whole point of withdrawal is so the respondent won't know? And as I understand it, your only comeback is this CC line on a form that is not adverted to in any other way or place. If it were discretionary, the manual would say, and if you feel like it, send it to the respondent. Or send it to the respondent if he already knows. Or it would say something, but it says nothing whatsoever unless I missed it. I'll tell you directly, they allege in their due process claim, at which both in the proposed 2nd Amendment complaint at page 201 of the excerpts of record, that there is no requirement to send a letter at all or to copy the respondent. I don't think they said there was no requirement. I didn't see them say there was no requirement to send a letter. There was no requirement to copy the respondent. There was a requirement to send a letter which says nothing about copying the respondent. And it is alleged that she mistakenly copied the respondent. If she mistakenly copied it, then she didn't copy it as a matter of discretion. She copied it because she made a mistake. Now I understand you may contest that, but the argument is that she didn't copy it for any reason. She just copied it because she made a mistake. Well, Your Honor, I think the word mistake in that context is a little bit ambiguous. Because mistake could mean that I did something that I shouldn't have done, or I did something unintentionally. Well, in either case, what's the social, economic, or political policy that is addressed by either copying or not copying the employer on the letter? The copying part, not the other. You're concentrating on writing the letter. No one's contesting that she wrote the letter or that she was supposed to write the letter. But what's the point? What's the social, economic, or policy interest? And let's even assume that it was discretionary whether to copy or not the letter, although it appears it probably wasn't. But suppose it was. I still want to know how the second part of that test just meant. So to answer that, Your Honor, I think this may be something that does need to be remanded to the district court for further factual analysis. But in terms of if it was a mistake because she intentionally sent it to the respondent, and then after the fact realized— But you're not answering my question. Let's say she intentionally sent it to the respondent. Let's say she had discretion to send it to the respondent. I'm going to assume both of those things for present purposes. What's the social, economic, or political interest that's forwarded by exercising that discretion? I think that's important because she is informing the respondent that they still cannot retaliate against her. Now, there's a weird thing here in the sense that her reasoning for withdrawing the complaint was that she didn't want her employer to find out that she'd made the complaint. And so that's a bit problematic. But that doesn't take it outside of whether or not there's a policy for why she copied the respondent. And so it may be that she—I'm not conceding this, but it may be that she was negligent in terms of copying the respondent, but that doesn't take it outside of the policy. The policy is? Informing the respondent that they can't retaliate against her because she had made a complaint. It may have been a mistake or negligent for her to have informed— That wasn't what the letter was about. The letter didn't say you can't discriminate against her. The letter was you're withdrawing your complaint. And acknowledging that that wasn't changing her status as a whistleblower, though, and that if she had further questions about her rights, she could contact Nevada OSHA. But it wasn't a message to the employer about anything. I— Okay. Anyway, your time is up. Thank you very much. Thank you, Your Honor. Mr. Spector, you have a minute, and you really have only a minute. Well, you're on mute, so now you have more than a minute. Go ahead. I hope that doesn't count towards my minute, Your Honor. So, look, obviously there are all these questions swirling around the case, right? What is the meaning of the word mistake? Did the government cause the harm in this case? What we would recommend the court do respectfully is just follow its precedent in DiMartini v. Farron. DiMartini invited discovery precisely into these entangled questions of property interest and causation. And that was a case, Your Honor, where the court found the allegations in the plaintiff's own declaration sufficed to move forward with discovery. If you read the first DiMartini opinion, you will see a lengthy passage where the court reckons with some of these same questions that you are asking judge Burzon about these entangled questions of causation. And he said, you know, these are going to be impossible to determine based on a motion to dismiss. The plaintiff isn't going to be able to plumb the depths of conspiracy. But what about an even simpler disposition, which is we now have the agreement of the government that the district court was wrong to say that she had absolutely no due process right here. Why don't we just say that and be met? We would fully support that, Your Honor, and be fully prepared to litigate this claim at the district court level. Okay, your time is up. Thank you very much. Let's take a 10-minute break. Or an 8-minute break. How about an 8-minute break? Thank you.
judges: Boggs, Tashima, Berzon